6-22-2009: Historical Cell-Site Information
EAG:NS
F.#2013R00786

# 13 MISC 539

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION       :
OF THE UNITED STATES OF AMERICA       :        SEALED APPLICATION
FOR AN ORDER AUTHORIZING THE RELEASE  :
OF HISTORICAL CELL-SITE INFORMATION   :
- - - - - - - - - - - - - - - - - - - - x

        Nadia I. Shihata, an Assistant United States Attorney

for the Eastern District of New York, hereby applies to the Court

for Orders pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing

that within seven days (1) Sprint ("Service Provider 1") disclose

recorded information identifying the base station towers and

sectors that received transmissions from (347) 392-0246, a

telephone issued by Service Provider 1 and subscribed to by

Besnik Llakatura, 186 Jefferson Avenue, Staten Island, New York

10306 ("SUBJECT TELEPHONE 1"); and (2) T-Mobile ("Service

Provider 2") disclose recorded information identifying the base

station towers and sectors that received transmissions from (571)

337-7018, a telephone used by Redinal Dervhaj ("SUBJECT TELEPHONE

2") (collectively, the "SUBJECT TELEPHONES" and "Service

Providers"), at the beginning and the end of calls or text

message transmissions, and the mobile switching center serving

the SUBJECT TELEPHONES during any calls or text message

transmissions, for the period from May 1, 2013 to July 16, 2013

(collectively, "the HISTORICAL CELL-SITE INFORMATION").

In support of this application I state the following:

1. I am an Assistant United States Attorney in the Office of Loretta E. Lynch, United States Attorney for the Eastern District of New York. As such, I am a duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d) and, as such, am authorized to apply for Orders authorizing the disclosure of the HISTORICAL CELL-SITE INFORMATION.

2. The Court is authorized to order the disclosure of the HISTORICAL CELL-SITE INFORMATION upon the government offering specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation. 18 U.S.C. § 2703(d).

3. I have discussed this matter with a special agent of the Federal Bureau of Investigation (the "investigative agency"), who is involved in the investigation. Based upon my discussion with the agent, I believe that the information likely to be obtained is relevant to an ongoing criminal investigation as required by 18 U.S.C. § 2703(d). First, the investigative agency is conducting a criminal investigation into possible violations of federal criminal laws, including extortion and conspiracy to commit extortion, in violation of 18 U.S.C. § 1951. Second, it is believed that BESNIK LLAKATURA, REDINEL DERVISHAJ,

2

and others known and unknown, have used the SUBJECT TELEPHONES in furtherance of the above offenses.  Third, HISTORICAL CELL-SITE INFORMATION will further the investigation by corroborating the observations of surveillance agents and information obtained from witnesses; helping to identify the location of the targets and their co-conspirators at the crimes occurred, as well as the meeting places used by the targets and their co-conspirators, and the geographic breadth of the conspiracy, and providing leads as to the location of evidence.

4.    Based upon discussions with a special agent of the investigative agency, the government hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation.

5.    The investigation has revealed, among other things, the following.  John Doe #1 owns a pizzeria in Little Neck, New York (hereinafter, the "Queens Pizzeria") and a seafood restaurant in Astoria, New York (hereinafter, the "Astoria Restaurant").  John Doe #1 has advised the following, in substance and in part:

a.    John Doe #1 has owned the Queens Pizzeria for approximately two years and opened the Astoria Restaurant in or about May 2013.

3

   b. The Astoria Restaurant uses and sells food items and products that were transported from, and/or manufactured, outside the state of New York.

   c. On or about the afternoon of May 11, 2013, an employee of the Queens Pizzeria informed John Doe #1 that a man had entered the Queens Pizzeria and asked to speak with John Doe #1.  John Doe #1 subsequently entered the dining area of the Queens Pizzeria and spoke with the man, an Albanian male, who introduced himself as "Redinel Dervishaj" (hereinafter, "DERVISHAJ").  DERVISHAJ informed John Doe #1 that he would have to pay DERVISHAJ $4,000 per month because John Doe #1 had recently opened the Astoria Restaurant in "our neighborhood." DERVISHAJ further stated that if John Doe #1 did not know who DERVISHAJ was, John Doe #1 should look DERVISHAJ up on the Internet.[1]

   d. Following this encounter, on or about May 11, 2013, John Doe #1 called SUBJECT TELEPHONE 1 and spoke with his

---

[1] A "Google" search for "Redinel Dervishaj" results in articles from various media outlets showing photographs of DERVISHAJ and revealing the following information regarding DERVISHAJ's involvement in a fatal stabbing: According to the news articles, in or about March 2012, DERVISHAJ was arrested for stabbing Antonio Lacertosa with a butcher knife on Staten Island, New York, during Lacertosa's engagement party.  Lacertosa died from his injuries.  In or about April 2012, a Staten Island grand jury declined to indict DERVISHAJ for Lacertosa's murder, after viewing video surveillance footage of events leading up to the stabbing, which DERVISHAJ's counsel argued showed DERVISHAJ acted in self-defense.

4

friend, Besnik Llakatura (hereinfafter, "LLAKATURA"), a New York
City Police Department ("NYPD") officer. LLAKATURA advised John
Doe #1 that DERVISHAJ and others extort various Albanian
establishments in Astoria and that John Doe #1 opened the Astoria
Restaurant in "their neighborhood."

      e.    On or about the evening of May 11, 2013, an
employee of the Astoria Restaurant informed John Doe #1 that two
men came to the Astoria Restaurant looking for John Doe #1 when
John Doe #1 was not there. At approximately 10:41 pm, John Doe
#1 received a call on his mobile telephone from a telephone
number with area code 718 (hereinafter, "718 Telephone Number
1").[2] According to John Doe #1, the person who called him from
718 Telephone Number 1 identified himself as "Redinel" and, in
Albanian, reiterated that John Doe #1 had opened his restaurant
in "our neighborhood" and, as a result, John Doe #1 would have to
pay "us."

      6.    Video surveillance footage captured by security
cameras installed within the Queens Pizzeria corroborates John
Doe #1's account of what transpired on the afternoon of May 11,
2013. The video surveillance footage shows a man entering the
Queens Pizzeria at approximately 3:47 pm[3] and speaking with an

---

    [2]    Records checks reveal that 718 Telephone Number 1
belongs to a pay phone located in Astoria, New York.

    [3]    Analysis of the video surveillance footage from the
Queens Pizzeria indicates that the time-stamp from the footage is

employee behind the pizza counter.  The employee then walks away.
Approximately 25 seconds later, John Doe #1 enters the dining
area from the back of the Queens Pizzeria and speaks with the man
who had entered.  John Doe #1 and the man sit together at a table
in the Queens Pizzeria for a short time, after which the man
exits the Queens Pizzeria.  Telephone records also confirm that
John Doe #1 called SUBJECT TELEPHONE 1 at approximately 3:53 pm
on May 11, 2013.

        7.   On or about March 23, 2013, DERVISHAJ was arrested
in Queens, New York on a domestic violence charge.  According to
the NYPD Domestic Incident Report, DERVISHAJ's phone number is
SUBJECT TELEPHONE 2.  Telephone records reveal that SUBJECT
TELEPHONE 1 called SUBJECT TELEPHONE 2 at approximately 3:13 pm
on May 11, 2013 - approximately 34 minutes before DERVISHAJ
visited the Queens Pizzeria on May 11, 2013.  Telephone records
also reveal that SUBJECT TELEPHONE 2 called SUBJECT TELEPHONE 1
on May 11, 2013, after DERVISHAJ's visit to the Queens Pizzeria,
at the following approximate times: 3:49 pm, 5:58 pm, 6:08 pm,
and 10:47 pm.

        8.   According to John Doe #1, on or about the evening
of May 12, 2013, John Doe #1 closed the Queens Pizzeria, got into
his vehicle and began driving home.  As John Doe #1 was driving,

---

an hour behind the actual time (i.e., when the video footage
indicates that it is 2:47 pm, it is actually 3:47 pm).  The time
set forth in paragraphs 6 and 12 reflect the actual time.

he noticed a white Chevy Malibu sedan (hereinafter, the "Chevy Malibu") following his vehicle. Thereafter, John Doe #1 observed DERVISHAJ get out of the Chevy Malibu, knock on the front driver's side window of John Doe #1's vehicle and state the following, in Albanian, in substance and in part: "What happened? You think you're a tough guy? You think you have balls of steel? I want $4,000 for the restaurant per month." DERVISHAJ further stated that John Doe #1's restaurant was going to be a "gold mine" and that John Doe #1 had to pay "us." John Doe #1 reported the license plate number of the Chevy Malibu to law enforcement personnel. Records checks reveal that the Chevy Malibu is registered to DERVISHAJ at an address in Queens, New York. Telephone records reveal that (1) SUBJECT TELEPHONE 2 called SUBJECT TELEPHONE 1 at approximately 1:56 pm and 5:20 pm on May 12, 2013; and (2) SUBJECT TELEPHONE 1 called SUBJECT TELEPHONE 2 at approximately 8:29 pm on May 12, 2013.

9.     According to John Doe #1, on or about May 14, 2013, at approximately 8:30 pm, John Doe #1 noticed the Chevy Malibu on the streets of Astoria, Queens. At approximately 10:30 pm, John Doe #1 saw DERVISHAJ park the Chevy Malibu across the street from the Astoria Restaurant and walk towards the Astoria Restaurant. Thereafter, DERVISHAJ again demanded money from John Doe #1. John Doe #1 told DERVISHAJ that he was not making any money from the Astoria Restaurant, as he had not yet received his

7

liquor license. DERVISHAJ nonetheless continued to demand payment, telling John Doe #1, in substance and in part, "you have to take care of us." Telephone records reveal that SUBJECT TELEPHONE 2 called SUBJECT TELEPHONE 1 at approximately 8:04 pm, 8:22 pm, and 11:02 pm on May 14, 2013.

10. Telephone records further reveal that between May 17, 2013 and July 3, 2013, SUBJECT TELEPHONE 1 and SUBJECT TELEPHONE 2 were in contact approximately 29 times.

11. John Doe #1 has advised the following, in substance and in part:

a. On or about the evening of July 6, 2013, John Doe #1 closed up the Queens Pizzeria. As John Doe #1 exited the Queens Pizzeria and proceeded towards his vehicle, which was parked in a driveway behind the Queens Pizzeria, John Doe #1 noticed a black Dodge Charger vehicle (hereinafter, the "Dodge Charger") also parked behind the Queens Pizzeria.

b. John Doe #1 pulled out of the driveway and turned left onto the street, at which point he noticed at least three men inside the Dodge Charger. Thereafter, the Dodge Charger began following John Doe #1's vehicle. John Doe #1 noticed that the Dodge Charger did not have a front license plate.

c. John Doe #1, who was driving on a narrow residential street, subsequently attempted to make a U-turn in an

8

effort to see the Dodge Charger's rear license plate. As John Doe #1 did so, his vehicle ended up nose-to-nose with the Dodge Charger, at which point John Doe #1 reversed his vehicle for approximately half a block and attempted to turn his vehicle around. John Doe #1 was unable to turn his vehicle around, however, as his vehicle was too close to a street pole on the corner. At this point, the driver of the Dodge Charger exited the Dodge Charger carrying a gun, ran towards John Doe #1's vehicle, and pointed his gun at John Doe #1, while yelling at John Doe #1. John Doe #1 managed to escape the area and drove away.

12. Video surveillance footage in and around the Queens Pizzeria shows that John Doe #1 closed the Queens Pizzeria on July 6, 2013 at approximately 11:27 pm. Video surveillance footage also shows that a black Dodge Charger drove by the Queens Pizzeria at approximately 9:47 pm, and was outside the front entrance of the Queens Pizzeria from approximately 10:00 pm tc 10:10 pm. Within the next hour, the video surveillance footage further shows a black Dodge Charger drive by the Queens Pizzeria several times onto a side street. The black Dodge Charger captured by the video surveillance footage had no front license plate.

13. According to John Doe #1, shortly after the abcve-described incident with the Dodge Charger, at approximately 12:23

9

am on July 7, 2013, John Doe #1 received a phone call on his mobile telephone from DERVISHAJ, using a telephone number beginning with area code 718 (hereinafter, "718 Telephone Number 2").[4] According to John Doe #1, DERVISHAJ informed John Doe #1, in Albanian and in substance and in part, that DERVISHAJ had not forgotten about John Doe #1, that he knew what was going on and that John Doe #1 "got lucky this time."

14.   At approximately 6:33 pm on July 7, 2013, LLAKATURA sent John Doe #1 a text message from the SUBJECT TELEPHONE, which stated "U are in deep shit u know.   I dont want ur problems to become mine."

15.   Telephone records reveal that (1) SUBJECT TELEPHONE 2 called SUBJECT TELEPHONE 1 at approximately 1:32 pm, 3:12 pm, 4:44 pm, 4:51 pm, 8:26 pm, 9:05 pm, and 10:01 pm on July 7, 2013; and (2) SUBJECT TELEPHONE 1 called SUBJECT TELEPHONE 2 at approximately 9:49 pm on July 7, 2013.

16.   On or about July 8, 2013, at approximately 5:50 pm, John Doe #1 called LLAKATURA on SUBJECT TELEPHONE 1, which call was consensually recorded.  A review of the recording reveals that, during this call, LLAKATURA asked John Doe #1 what happened.  John Doe #1 told LLAKATURA he did not know what to do and that "they" showed up with weapons.  LLAKATURA asked John Doe

---

    [4]      Telephone records reveal that 718 Telephone Number 2 belongs to a pay phone located in Astoria, New York, located approximately 0.6 miles from the Astoria Restaurant.

10

#1 where he was and John Doe #1 indicated he was in New Jersey. LLAKATURA advised John Doe #1 to stay in New Jersey and not to come to New York until tomorrow. LLAKATURA further advised John Doe #1 that he would be in Astoria tomorrow and would see what to do then.

17. Telephone records reveal that SUBJECT TELEPHONE 2 called SUBJECT TELEPHONE 1 at approximately 1:42 pm, 2:15 pm, and 5:59 pm on July 8, 2013.

18. At approximately 9:49 pm on July 8, 2013, John Doe #1 received a text message on his mobile phone from LLAKATURA, using SUBJECT TELEPHONE 1, asking how far John Doe #1 was from LLAKATURA's house. In response, John Doe #1 sent a text message to SUBJECT TELEPHONE 1 at approximately 9:52 pm, indicating he was quite far from LLAKATURA's house. At approximately 9:53 pm, John Doe #1 received text message reply from SUBJECT TELEPHONE 1, stating, in sum and substance, "forget it then."

19. At approximately 1:08 am on July 9, 2013, John Doe #1 received a text message on his mobile telephone from LLAKATURA, using SUBJECT TELEPHONE 1, advising John Doe #1 to tell the manager of the Astoria Restaurant to be careful tomorrow and not to be by himself.

20. On or about July 9, 2013, at approximately 10:19 am, John Doe #1 received a text message on his mobile telephone from LLAKATURA, using SUBJECT TELEPHONE 1, asking John Doe #1 to

11

meet him in Staten Island, New York. Thereafter, John Doe #1 spoke with LLAKATURA on SUBJECT TELEPHONE 1. According to John Doe #1, during their conversation, LLAKATURA provided John Doe #1 with an address in Staten Island at which John Doe #1 could meet LLAKATURA and, further, that "they" had another "crew" following John Doe #1 around and that they were "bad people."

21. On or about the afternoon of July 9, 2013, John Doe #1 met with LLAKATURA in Staten Island, New York, which meeting was physically surveilled by law enforcement agents.[5] John Doe #1 advised that the following transpired at the meeting, in substance and in part:

a. LLAKATURA advised John Doe #1 that he was in a bad situation and that the individuals extorting John Doe #1 were bad people who could not be fought because they would hurt John Doe #1.

b. LLAKATURA further advised that, on or about July 8, 2013, DERVISHAJ came to LLAKATURA's residence with two friends, one of whom was an individual LLAKATURA knew as "Ardit," to discuss the amount of money they wanted from John Doe #1. LLAKATURA stated that DERVISHAJ wanted three months' payment from John Doe #1, for the three months the Astoria Restaurant had been open, totaling $12,000, by July 11, 2013. LLAKATURA told John

---

[5] John Doe #1 was equipped with a recording device during this meeting, but the recording device malfunctioned and, as a result, the meeting was not recorded.

12

Doe #1 that if John Doe #1 did not pay, John Doe #1 would be physically harmed. LLAKATURA further stated that the individuals extorting John Doe #1 had intended to wound John Doe #1 by shooting him on the evening of July 6, 2013.

          c.    John Doe #1 told LLAKATURA that he could not come up with $12,000 by July 11, 2013, and would only be able to pay $4,000 by that date. LLAKATURA stated that he would speak with "them" and get back to John Doe #1.

5. At approximately 7:48 pm on July 9, 2013, LLAKATURA sent a text message from SUBJECT TELEPHONE 1 to John Doe #1 stating "U have no problem do ur things."

          22.  At approximately 10:41 pm on July 9, 2013, John Doe #1 received a telephone call on his mobile phone from SUBJECT TELEPHONE 1. According to John Doe #1, during this phone call, LLAKATURA indicated that he was a few blocks away from the Astoria Restaurant and was going to pass by, which LLAKATURA thereafter did. Video surveillance footage in and around the Astoria Restaurant shows LLAKATURA arriving at the Astoria Restaurant at approximately 10:44 pm and thereafter speaking with John Doe #1 outside the Astoria Restaurant. John Doe #1 related that the following transpired during his meeting with LLAKATURA, in substance and in part:

13

a. LLAKATURA related that two Albanian men had come to see LLAKATURA and told LLAKATURA that they had been sent by DERVISHAJ.

b. According to LLAKATURA, one of the Albanian men then called DERVISHAJ from his mobile telephone and handed the phone to LLAKATURA. LLAKATURA advised that DERVISHAJ told LLAKATURA that John Doe #1 must pay DERVISHAJ $6,000 by July 11, 2013 and another $6,000 by August 15, 2013, otherwise DERVISHAJ would break John Doe #1's legs. LLAKATURA offered to loan John Doe #1 $2,000 towards the $6,000 payment to DERVISHAJ due on July 11, 2013.

23. Telephone records reveal that (1) SUBJECT TELEPHONE 2 called SUBJECT TELEPHONE 1 at approximately 3:42 pm, 3:53 pm, 9:06 pm, and 9:09 pm on July 9, 2013; and (2) SUBJECT TELEPHONE 1 called SUBJECT TELEPHONE 2 at approximately 6:50 pm, 8:32 pm, 8:59 pm, and 9:00 pm, and 11:39 pm on July 9, 2013. 6.On or about July 10, 2013 at approximately 2:14 pm, John Doe #1 called LLAKATURA on SUBJECT TELEPHONE 1, which call was consensually recorded. A review of the recording reveals that, during this phone call, LLAKATURA asked John Doe #1 whether John Doe #1 would make the cash payment to DERVISHAJ himself or whether LLAKATURA should do so instead. John Doe #1 stated that he wanted to meet DERVISHAJ face-to-face. LLAKATURA stated that he also wanted to be present at the meeting with DERVISHAJ and

14

advised John Doe #1 to meet LLAKATURA the next day in the afternoon.

24. At approximately 3:23 pm on July 10, 2013, John Doe #1 called SUBJECT TELEPHONE 1 and spoke with LLAKATURA, which call was consensually recorded. A review of the recording reveals that, during the phone call, LLAKATURA and John Doe #1 discussed whether to meet with DERVISHAJ later that night or the next day. LLAKATURA told John Doe #1 that he would provide him with a $2,000 loan when they met, but that John Doe #1 would need to provide the rest of the money ($4,000). LLAKATURA and John Doe #1 ultimately agreed to meet the next day, after LLAKATURA got off from work, in Astoria, New York.

25. Telephone records reveal that (1) SUBJECT TELEPHONE 2 called SUBJECT TELEPHONE 1 at approximately 4:57 pm, 5:02 pm, 5:05 pm, and 7:32 pm on July 10, 2013; and (2) SUBJECT TELEPHONE 1 called SUBJECT TELEPHONE 2 at approximately 5:54 pm and 6:20 pm on July 10, 2013.

26. On or about July 11, 2013 at approximately 7:37 am, John Doe #1 called SUBJECT TELEPHONE 1 and spoke with LLAKATURA, which call was consensually recorded. A review of the recording reveals that, during the call, John Doe #1 expressed concern over his safety and asked LLAKATURA if he could meet with LLAKATURA. LLAKATURA told John Doe #1 that they could meet later in the day, five minutes before the meeting with DERVISHAJ, to go

15

over any concerns John Doe #1 had. LLAKATURA stated that he would make sure nothing happened to John Doe #1 during the meeting with DERVISHAJ. LLAKATURA ultimately agreed to meet with John Doe #1 briefly in Staten Island, New York.

27. On or about the afternoon of July 11, 2013, John Doe #1 met with LLAKATURA in Staten Island, New York, which meeting was consensually recorded. John Doe #1 advised that the following transpired during the meeting, in substance and in part:

a. LLAKATURA told John Doe #1 that John Doe #1 could open up a club with DERVISHAJ. LLAKATURA advised that the club would be in John Doe #1's name, but DERVISHAJ would be a partner in the club. In the event this transpired, LLAKATURA told John Doe #1 that for every $2,000 John Doe #1 made from the club, John Doe #1 would have to give DERVISHAJ $1,000.

b. LLAKATURA stated that he had spoken with DERVISHAJ and that, as long as John Doe #1 paid DERVISHAJ, John Doe #1 would be fine.

c. LLAKATURA stated that DERVISHAJ would search John Doe #1 when they met with DERVISHAJ later that night and that DERVISHAJ expected another $6,000 payment by August 15, 2013.

d. While discussing possible options with John Doe #1, LLAKATURA told John Doe #1 that if he went into witness

16

protection, DERVISHAJ and his associates would hurt members of John Doe #1's family who reside in another state, and asked John Doe #1 what type of car John Doe #1's brother-in-law has.

28.  On or about the evening of July 11, 2013, John Doe #1 met with LLAKATURA in Astoria, New York, which meeting was physically surveilled and partially recorded.  John Doe #1 advised that the following transpired during the meeting, in substance and in part:

a.  John Doe #1 entered LLAKATURA's vehicle, at which point LLAKATURA handed John Doe #1 $2,000 in cash. LLAKATURA subsequently received a telephone call on his mobile phone from DERVISHAJ, during which John Doe #1 overheard DERVISHAJ telling LLAKATURA where to meet him.  Following this phone call, LLAKATURA told John Doe #1 to take everything out of his pockets and leave these items in LLAKATURA's vehicle. LLAKATURA and John Doe #1 then proceeded to meet with DERVISHAJ in Astoria, New York.[6]

b.  At the start of the meeting with DERVISHAJ, DERVISHAJ searched both John Doe #1 and LLAKATURA.  DERVISHAJ then asked John Doe #1 what he had to say for himself.  LLAKATURA told John Doe #1 to give DERVISHAJ the money, at which point DERVISHAJ gestered to slow down and asked John Doe #1 to get into

---

[6]  A review of the recording corroborates John Doe #1's account of what transpired set forth in paragraph 28(a).

17

DERVISHAJ's car – the Chevy Malibu – with DERVISHAJ.  LLAKATURA
remained outside the Chevy Malibu.

        c.    While inside the Chevy Malibu, DERVISHAJ told
John Doe #1 that he was lucky the other night and that John Dce
#1 and the manager of the Astoria Restaurant should thank
LLAKATURA.  John Doe #1 then handed DERVISHAJ $6,000 in cash, at
which point DERVISHAJ inquired about the rest of the money.  John
Doe #1 indicated that he was told he had until August 15, 2013 to
come up with the rest of the money.

        d.    DERVISHAJ stated that, in the future, he
would give John Doe #1 his telephone number, which John Doe #1
could use to contact DERVISHAJ, in the event John Doe #1 needed
protection and, also, to make payments to DERVISHAJ.  John Doe #1
then left the meeting location with LLAKATURA.

        29.    Based upon the above proffer, the government
requests that the Court issue Orders that provide, pursuant to
18 U.S.C. § 2703(c)(1) and (d), a directive to the Service
Providers to supply within seven days the HISTORICAL CELL-SITE
INFORMATION for the period from May 1, 2013 to July 16, 2013.

        30.    The government also requests that the Service
Providers, and any other person or entity whose assistance is
used to facilitate execution of the Orders be ordered not to
disclose (a) the existence of the Order of Authorization; (b) the
existence of the Orders to Service Provider and (c) the

production of the HISTORICAL CELL-SITE INFORMATION, to the listed subscriber for the SUBJECT TELEPHONES, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONES, or to any other person, unless and until otherwise ordered by the Court. Any such disclosure might endanger the life or physical safety of an individual; cause a target to flee from prosecution; result in the destruction of or tampering with evidence; risk intimidation of potential witnesses; and/or seriously jeopardize the investigation.

31. No prior request for the relief set forth herein has been made except to the extent set forth above. The foregoing is affirmed under the penalties of perjury. See 28 U.S.C. § 1746.

Dated:    Brooklyn, New York
          July 16, 2013

Nadia I. Shihata
Assistant United States Attorney
(718) 254-6295

19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



- - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION          :
OF THE UNITED STATES OF AMERICA          :     SEALED ORDER TO
FOR AN ORDER AUTHORIZING THE RELEASE     :     SERVICE PROVIDER
OF HISTORICAL CELL-SITE INFORMATION      :     T-MOBILE
- - - - - - - - - - - - - - - - - - - x

WHEREAS this Court has, upon the application of the

United States of America, entered an Order pursuant to 18 U.S.C.

§ 2703(c)(1) and (d), directing that within seven days T-Mobile

(the "service provider") disclose recorded information

identifying the base station towers and sectors that received

transmissions from (571) 337-7018, a telephone used by Redinel

Dervishaj (the "SUBJECT TELEPHONE"), at the beginning and the end

of calls or text message transmissions, and the mobile switching

center serving the SUBJECT TELEPHONE during any calls or text

message transmissions, for the period from May 1, 2013 to July

16, 2013 (collectively, "the HISTORICAL CELL-SITE INFORMATION")

NOW THEREFORE, IT IS HEREBY:

ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d),

that the service provider shall supply within seven days the

HISTORICAL CELL-SITE INFORMATION for the period from May 1, 2013

to July 16, 2013;

IT IS FURTHER ORDERED that this Order shall be sealed

until otherwise ordered by the Court, except that copies may be

retained by the United States Attorney's Office, the Federal Bureau of Investigation, the service provider and any other person or entity whose assistance is used to execute this Order; and

IT IS FURTHER ORDERED that unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction, the existence of the this Order or the production of the HISTORICAL CELL-SITE INFORMATION, to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated:    Brooklyn, New York
          July 16, 2013

s/Cheryl L. Pollak

THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# 13 MISC 539

- - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION    :
OF THE UNITED STATES OF AMERICA    :    SEALED ORDER
FOR AN ORDER AUTHORIZING THE RELEASE  :    OF AUTHORIZATION
OF HISTORICAL CELL-SITE INFORMATION  :
- - - - - - - - - - - - - - - - - - - x

This matter having come before the Court pursuant to an application by Assistant United States Attorney Nadia I. Shihata, an attorney for the Government as defined by Rule 1(b)(1) of the Federal Rules of Criminal Procedure and a duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d), requesting Orders pursuant to 18 U.S.C. § 2703(c)(1) and (d), directing that within seven days (1) Sprint ("Service Provider 1") disclose recorded information identifying the base station towers and sectors that received transmissions from (347) 392-0246, a telephone issued by Service Provider 1 and subscribed to by Besnik Llakatura, 186 Jefferson Avenue, Staten Island, New York 10306 ("SUBJECT TELEPHONE 1"); and (2) T-Mobile ("Service Provider 2") disclose recorded information identifying the base station towers and sectors that received transmissions from (571) 337-7018, a telephone used by Redinal Dervhaj ("SUBJECT TELEPHONE 2") (collectively, the "SUBJECT TELEPHONES" and "Service Providers"), at the beginning and the end of calls or text message transmissions, and the mobile switching center serving the SUBJECT TELEPHONES during any calls or text message

transmissions, for the period from May 1, 2013 to July 16, 2013 (collectively, "the HISTORICAL CELL-SITE INFORMATION");

UPON REVIEW OF THE APPLICATION, THE COURT HEREBY FINDS THAT:

Pursuant to 18 U.S.C. § 2703(c)(1) and (d), the government has offered specific and articulable facts showing that there are reasonable grounds to believe that the HISTORICAL CELL-SITE INFORMATION is relevant and material to an ongoing criminal investigation into possible violations of federal criminal laws, including extortion and conspiracy to commit extortion, in violation of 18 U.S.C. § 1951, being conducted by the Federal Bureau of Investigation (the "investigative agency"); now therefore,

IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d), that the Service Providers shall supply to the investigative agency within seven days the HISTORICAL CELL-SITE INFORMATION for the period from May 1, 2013 to July 16, 2013;

Good cause having been shown, IT IS FURTHER ORDERED, that this Order and the application be sealed until otherwise ordered by the Court, and that the Service Providers, their respective representatives, agents and employees, and any other person or entity involved in facilitating this Order shall not disclose in any manner, directly or indirectly, by any action or

inaction, the existence of this Order, the existence of the respective Orders to the Service Providers or the production of the HISTORICAL CELL-SITE INFORMATION to the listed subscriber for the SUBJECT TELEPHONES, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONES, or to any other person.

Dated:    Brooklyn, New York
          July 16, 2013

s/Cheryl L. Pollak

THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# 13 MISC 539

- - - - - - - - - - - - - - - - - - - - x
IN THE MATTER OF AN APPLICATION            :
OF THE UNITED STATES OF AMERICA            :        SEALED ORDER TO
FOR AN ORDER AUTHORIZING THE RELEASE       :        SERVICE PROVIDER
OF HISTORICAL CELL-SITE INFORMATION        :        SPRINT_____
- - - - - - - - - - - - - - - - - - - - x

WHEREAS this Court has, upon the application of the

United States of America, entered an Order pursuant to 18 U.S.C.

§ 2703(c)(1) and (d), directing that within seven days Sprint

(the "service provider") disclose recorded information

identifying the base station towers and sectors that received

transmissions from (347) 392-0246, a telephone issued by the

service provider and subscribed to by Besnik Llakatura, 186

Jefferson Avenue, Staten Island, New York 10306 (the "SUBJECT

TELEPHONE"), at the beginning and the end of calls or text

message transmissions, and the mobile switching center serving

the SUBJECT TELEPHONE during any calls or text message

transmissions, for the period from May 1, 2013 to July 16, 2013

(collectively, "the HISTORICAL CELL-SITE INFORMATION")

NOW THEREFORE, IT IS HEREBY:

ORDERED, pursuant to 18 U.S.C. § 2703(c)(1) and (d),

that the service provider shall supply within seven days the

HISTORICAL CELL-SITE INFORMATION for the period from May 1, 2013

to July 16, 2013;

IT IS FURTHER ORDERED that this Order shall be sealed

until otherwise ordered by the Court, except that copies may be

retained by the United States Attorney's Office, the Federal Bureau of Investigation, the service provider and any other person or entity whose assistance is used to execute this Order; and

IT IS FURTHER ORDERED that unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction, the existence of the this Order or the production of the HISTORICAL CELL-SITE INFORMATION, to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Dated:    Brooklyn, New York
          July 16, 2013

                              s/Cheryl L. Pollak

                    ────────────────────────────
                    THE HONORABLE CHERYL L. POLLAK
                    UNITED STATES MAGISTRATE JUDGE
                    EASTERN DISTRICT OF NEW YORK